IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re: | ) | In Proceedings |
| | ) | Under Chapter 13 |
| DALLAS R. LAW, | ) | |
| | ) | Bk. No. 21-40223 |
| Debtor. | ) | |

**OPINION**

The matters before the Court are the confirmation of the Debtor's Second Amended Chapter 13 Plan (Plan) and the Chapter 13 Trustee's (Trustee) Objection to Confirmation (Objection). These matters involve a determination of how $8,000.00 in alleged pre-petition preferences (Preferences) affect confirmation. The facts are not in dispute and are as follows. The Debtor filed his Chapter 13 bankruptcy on May 18, 2021, disclosing in Paragraph 7 of his Statement of Financial Affairs that he transferred $8,000.00 to family members in February, 2021, within one year prior to filing his bankruptcy. On September 2, 2021, the Debtor filed an amended Chapter 13 statement of current monthly income (Form 122C-1) and an amended calculation of disposable income (Form 122C-2) setting forth monthly disposable income of $42.48. His Second Amended Chapter 13 Plan, filed September 1, 2021, provides for payments to various secured creditors, payment of a domestic support obligation of $2,640.38, payment of priority federal income taxes of $33,144.85, and a pool for general unsecured creditors of $6,450.00. Timely priority claims for the federal taxes and domestic support obligation have been filed with the Court, along with timely general unsecured claims of more than $150,000.00.

The Debtor and the Trustee agree that §1325 of the Bankruptcy Code, 11 U.S.C. §1325, is controlling, and that without considering the effects of the Preferences, the pool for general

1

unsecured creditors over the five-year period of the Plan should be $2,548.80 ($42.48 x 60 months), and that the Debtor is proposing to pay more, a total of $6,450.00, over the five-year period of the Plan. The Debtor contends that this amount is sufficient to meet both the "best interests of creditors test" of §1325(a)(4), and the "disposable income test" of §1325(b)(1)(B) and therefore the Plan can be confirmed. The Trustee argues that the "good faith test" of §1325(a)(3) requires that the $8,000.00 Preferences be added to the $2,548.80 in "disposable income" to create a total pool for unsecured creditors of $10,548.80.

The Court will first address the threshold issue of whether the Plan meets the "best interests of creditors test" of §1325(a)(4) and the "disposable income test" of §1325(b)(1)(B), before addressing the Trustee's "good faith" argument. Section 1325(a) sets forth certain requirements for confirmation of a Chapter 13 plan, and states that "[e]xcept as provided in subsection (b), the court shall confirm a plan" if those requirements are met. Section 1325(b) contains additional provisions that must be met if an objection is filed.

Section 1325(a)(4), commonly referred to as the "best interests of creditors test," requires that

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

Section 1325(a)(4), therefore, requires that a debtor's plan provide "a distribution to the general unsecured creditors that is not less than they would have received had the case been liquidated under chapter 7." *In re Trombetta*, 383 B.R. 918, 924 (Bankr. S.D. Ill. 2008); *See generally*, 8 *Collier on Bankruptcy* ¶ 1325 (16th Ed. 2021). In order to arrive at the liquidation value, "the

Court is to calculate the value of all nonexempt property of the estate, reduced by the administrative expenses that would be incurred in a chapter 7 case, by the amount of all lien claims that would be enforceable against the property under chapter 7, and by the amount attributable to priority unsecured claims allowed under chapter 7." *Trombetta,* 383 B.R. at 924.

In the case before this Court, the requirements of §1325(a)(4) are met. The only property to be distributed to creditors in a hypothetical chapter 7 case would be the $8,000.00 Preferences. Those funds would be reduced by the administrative expenses incurred in the chapter 7 case, and then by the amount attributable to priority unsecured claims. Here, the priority unsecured claims total $35,785.23. Pursuant to §507 of the Bankruptcy Code, those priority claims would be paid before general unsecured creditors in a chapter 7 case. 11 U.S.C. §507; *Trombetta,* 383 B.R. at 924. Therefore, without even considering chapter 7 administrative expenses[1], the amount that would be distributed to general unsecured creditors in a chapter 7 case would be $0.00.

This result mirrors the fate of unsecured creditors in *Trombetta*. There, the debtor's plan provided for payment of $5,700.00 in value released by a lien avoidance. *Id*. at 925. Under the terms of the standard chapter 13 plan, priority creditors were to be paid first, leaving none of the $5,700.00 lien avoidance available for general unsecured creditors. *Id*. The chapter 13 trustee objected to the plan, contending that the $5,700.00 lien avoidance should be added to the existing plan base and distributed exclusively to general unsecured creditors. *Id*. at 924. The court

---

1 The Trustee asserts that if he successfully pursues the $8,000.00 Preference, the net recovery after deducting his Trustee's fees of 8% would be $7,360.00. This is an incorrect calculation to use for the "best interests of creditors test" as it is based on the fee of a chapter 13 trustee and not that of a chapter 7 trustee whose fee is established by Section 326 of the Bankruptcy Code. 11 U.S.C. §326. Section 326 authorizes a chapter 7 trustee's fee of 25% of the first $5,000.00 to be distributed, and 10% of the next amount in excess of $5,000.00 and not more than $50,000.00. Therefore, in this case, the trustee's fee in a hypothetical chapter 7 case would be $1,550.00, resulting in a net recovery of $6,450.00, which is the exact amount the Debtor's Plan proposes to pay.

disagreed, finding that such a result "would violate 11 U.S.C. §1325(a)(4) by enabling the general unsecured creditors to receive far more than they would have received had the lien been avoided and the vehicle liquidated by a chapter 7 trustee." *Id.* at 926. As to the fact that general unsecured creditors would not share in the value released by the lien avoidance, the court remarked that this result "simply is a sad reality for the general unsecured creditors based on the mathematics of the case." *Id*. at 925. Likewise, the mathematics of this case would yield $0.00 for the general unsecured creditors in a chapter 7. Here, however, the Debtor has exceeded the requirements of §1325(a)(4) by proposing to pay general unsecured creditors $6,450.00 through his chapter 13 Plan.

The Trustee suggests that preference recoveries should be considered separately from the "best interests of creditors test" as they are inherently different from other avoidance recoveries which are included in the §1325(a)(4) calculation. Trustee's Brief at 3 - 4.[2] The Bankruptcy Code does not support that position. Section 541(a)(3) of the Bankruptcy Code states that the bankruptcy estate includes "[a]ny interest in property that the trustee recovers under section 329(b), 363(n), 543, *550,* 553, or 723 of this title." 11 U.S.C. §541(a)(3) (emphasis added). Section 550 of the Bankruptcy Code is the mechanism by which the trustee recovers the value of a transfer "avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a)." 11 U.S.C. §550. Therefore, funds recovered in §547 preference actions are "property of the estate," and like funds recovered in other

---

2 The Trustee cites to *In re Brennan,* 208 B.R. 448 (Bankr. S.D. Ill. 1997) which addressed whether property subject to lien avoidance should be reduced by a debtor's claim of exemption for purposes of the "best interests of creditors test." The *Brennan* court emphasized that the "best interests of creditors test" requires the debtor's exemptions to be tested as they would be in a chapter 7 case in light of §§522(g) through (i) governing a debtor's ability to exempt property following an avoidance action. *Id.* at 451 – 453. It is worth noting that in the case before this Court, the funds recovered by a chapter 7 trustee in a preference action under §547 would not be subject to a claim of exemption by the Debtor because the transfers were voluntary and did not involve a non-purchase money lien on household goods. *See* 11 U.S.C. §522(g).

4

avoidance actions, should be considered in calculations under the "best interests of creditors test" of §1325(a)(4).

The requirements of §1325(b)(1)(B) are met as well. Section 1325(b)(1), provides –

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –

>  (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Section 1325(b)(1)(B), commonly referred to as the "disposable income test," therefore requires that if the plan does not propose to pay all unsecured creditors in full under §1325(b)(1)(A), it must provide for payment of all the debtor's "projected disposable income."

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) changed the methodology for determining "disposable income," while leaving the term "projected disposable income" undefined. *Hamilton v. Lanning*, 560 U.S. 505, 509-510 (2010). "Disposable income" is now defined in §1325(b)(2) as:

> current monthly income received by the debtor . . . less amounts reasonably necessary to be expended –
>
>> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor….

The first component, "current monthly income," is the debtor's average monthly income received during the six months prior to the filing of the bankruptcy petition. *See* 11 U.S.C.

§101(10A)(A)(i). As to the second component, BAPCPA established different tests for determining the allowable expenses for "above-median" debtors and "below-median" debtors. *Lanning,* 560 U.S. at 510, citing 11 U.S.C. §1325(b)(2)(A)(i), §1325(b)(3)(A) and §707(b)(2). In *Lanning*, the Court adopted a "forward-looking" approach for calculating a debtor's "projected disposable income," finding that the one-time employer buyout received by the debtor prior to her bankruptcy need not be included. *Id.* at 524.

In the case before this Court, the parties agree that the Debtor's disposable income is $42.48 per month and that the minimum pool to general unsecured creditors required by §1325(b)(1)(B) for the five-year duration of the Plan is $2,548.80 ($42.48 x 60 payments). However, citing *Watters v. McRoberts*, 167 B.R. 146 (S.D. Ill. 1994), the Trustee contends that the $8,000.00 Preferences should be considered "additional disposable income" in the nature of a pending lawsuit or claim of the debtor. Trustee's Brief at 6. In *Watters*, the court concluded that the exempt portion of the debtor's personal injury recovery was "disposable income" that must be paid into his chapter 13 plan pursuant to §1325(b)(1)(B) because the recovery was not necessary to the support of the debtor or his dependents. *Watters*, 167 B.R. at 147.

Notwithstanding the change in the definition of "disposable income" by BAPCPA, the Trustee's reliance upon *Watters* is misplaced. In *Watters,* the exempt portion of the personal injury recovery was property that the debtor was pursuing on his own behalf and over which the debtor had control. A preference action, on the other hand, is an action that only arises upon the filing of the bankruptcy and is pursued on behalf of the bankruptcy estate. *See In re Loeffler*, 2011 WL 6736066 at 2-3 (Bankr. D. Colo. 2011).[3] Moreover, the Preferences in this case are

---

[3] *See also* 11 U.S.C. §551 – "Any transfer avoided under section 522, 544, 547, 548, 549, or 724(a) of this title, or

not subject to a claim of exemption by the Debtor. *See* note 2, *Supra*. Although the Preferences are appropriately considered in §1325(a)(4) calculations, they should not be included as "additional disposable income" for purposes of §1325(b)(1)(B). Here, the Debtor's $6,450.00 pool for general unsecured creditors exceeds the $2,458.80 required by § 1325(b)(1)(B). Therefore, the provisions of that section are met.

The Trustee also contends that notwithstanding §§1325(a)(4) and 1325(a)(1)(B), the Plan fails to meet the "good faith" requirement of §1325(a)(3). Section §1325(a)(3) requires that "the plan has been proposed in good faith and not by any means forbidden by law."  The determination of "good faith" is decided on a case-by-case basis considering the "totality of the circumstances." *In re Eubanks*, 581 B.R. 583, 588 (Bankr. S.D. Ill. 2018), citing *In re Smith*, 286 F.3d 461 (7th Cir. 2002).

In *Eubanks*, the Trustee argued that the debtors' plan was not proposed in good faith because the debtors, who were paying 100% to unsecured creditors over a five-year plan, were not paying in all of their disposable income and should be compelled to pay their creditors more quickly. *Eubanks*, 581 B.R. at 584. The Trustee contended that despite the plan's technical compliance with §1325(b)(1), the plan nonetheless violated the "good faith test" of §1325(a)(3) because unsecured creditors could be paid sooner. *Id.* at 585.

Relying upon the "intermediate approach" adopted in other jurisdictions, the court in *Eubanks* determined that "[i]f the proposed plan payment meets the requirements of §1325(b)(1)(A) or (B), the amount of the payment will not be considered in a good faith analysis

---

any lien void under section 506(d) of this title, is preserved for the benefit of the estate, but only with respect to property of the estate."

*unless* other, additional facts suggest bad faith." *Id*. at 588 (emphasis in original). Additional facts to consider include

> (1) whether the plan accurately states the secured and unsecured debts of the debtor; (2) whether the plan correctly states debtor's expenses; (3) whether the percentage of repayment of unsecured debts is correct; (4) whether inaccuracies in the plan amount to an attempt to mislead the bankruptcy court; (5) whether the proposed payments indicate a fundamental fairness in dealing with creditors; (6) whether the debtor is really trying to pay creditors to the reasonable limit of his ability or trying to thwart them; and (7) whether the plan accurately reflects the debtor's financial condition and affords substantial protection to unsecured creditors.

*Id.*, citing *In re Smith*, 286 F.3d at 466 & n.3. Noting that there were no allegations that the debtors had engaged in any "manipulative, deceitful or misleading conduct", the *Eubanks* court ruled that "the Court cannot conclude that a plan is fundamentally unfair when it explicitly complies with the Code and there are no other indicia of bad faith." *Id.* at 589.

    Here, the Trustee asserts that the Debtor is manipulating the Bankruptcy Code by choosing to provide a pool for the preference recovery, thereby avoiding a trustee's lawsuit against an insider. The Trustee contends that a debtor in such a situation can "unfairly manipulate the amount to be paid to unsecured creditors" with this approach, since a preference recovery by a chapter 13 trustee would be added to the debtor's disposable income and increase the amount to unsecured creditors. Trustee's Brief at 4 - 5. The Trustee argues that the Preferences must therefore be added to the pool for unsecured creditors to avoid a windfall to the Debtor's insiders at the expense of the unsecured creditors. Trustee's Brief at 3.

    The Trustee's argument is misplaced. Essentially, the only element of "bad faith" that the Trustee can point to is the amount of the pool to general unsecured creditors proposed by the

8

Debtor. However, like the debtors *in Eubanks*, the Debtor in this case has complied with the explicit provisions of the Bankruptcy Code. The Debtor cannot be faulted for proposing what the Bankruptcy Code permits him to do.

Moreover, had the Debtor proposed a plan leaving the Trustee to pursue the Preferences, the amount collected by the Trustee would be paid first to the priority tax claim and domestic support obligation, thereby reducing the Debtor's obligation to pay those claims. Instead, the Debtor is not only funding the priority claims in full, but also providing a pool of $6,450.00 for general unsecured creditors. Indeed, the Debtor in this case has proposed to pay general unsecured creditors more than is required, as the Debtor's $6,450.00 pool for general unsecured creditors exceeds the $0.00 payment required by §1325(a)(4), as well as the $2,548.80 payment required by §1325(b)(1)(B).

In summary, the Debtor's Plan is confirmable. The pool of $6,450.00 meets the requirements of §1325(a)(3), §1325(a)(4) and §1325(b)(1)(B).

See Separate Order entered this date.

ENTERED: December 29, 2021

/s/ William V. Altenberger
UNITED STATES BANKRUPTCY JUDGE